# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2696 | **DATE** | 6/13/2001 |
| **CASE TITLE** | Oraha Y. Meroki vs. William A. Halter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** The Court denies the Commissioner's motion for summary judgment [doc. # 20-1]. Plaintiff's motion for summary judgment [doc. # 18-1] is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. |
|---|---|
| | No notices required. |
| ✓ | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

JJK — courtroom deputy's initials

number of notices

JUN 1 4 2001
date docketed

6/13/2001
date mailed notice

JJK
mailing deputy initials

Document Number

23

E0-7
FILED FOR DOCKETING
01 JUN 13 PM 3: 47

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

ORAHA Y. MEROKI,                    )
                                    )
            Plaintiff,              )
                                    )
    vs.                             )          No. 00 C 2696
                                    )          Magistrate Judge Schenkier
WILLIAM A. HALTER,                  )
Acting Commissioner of Social Security,  )
                                    )          *DOCKETED*
            Defendant.[1]           )          JUN 1 4 2001

## MEMORANDUM OPINION AND ORDER

The plaintiff, Oraha Y. Meroki ("Mr. Meroki"), seeks judicial review pursuant to the Social Security Act, 42 U.S.C. § 405(g), of a final decision by the Commissioner ("Commissioner") of the Social Security Administration ("the Agency") denying his application for Supplemental Security Income ("SSI"), pursuant to 42 U.S.C. § 1381 *et seq.* (Title XVI). Mr. Meroki seeks summary judgment reversing the Commissioner's decision denying his claim for SSI or, in the alternative, remanding the case to the Commissioner for further proceedings (doc. # 18-1). The Commissioner has filed a cross-motion for summary judgment in his favor (doc. # 20-1). For the reasons set forth below, the Court denies the Commissioner's motion for summary judgment, and grants Mr. Meroki's motion for reversal and remand.[2]

---

[1]William A. Halter, the Acting Commissioner of the Social Security Administration, is substituted as defendant in place of Kenneth S. Apfel, the former Commissioner, pursuant to Fed.R.Civ.P. 25(d)(1).

[2]By the parties' consent, on September 8, 2000, this case was reassigned to this Court, pursuant to 28 U.S.C. § 636(c)(1) and Northern District of Illinois Local Rule 73.1(b), to conduct any and all proceedings and to enter final judgment (doc. #s 14, 15, 16).

23

# I.

## A.    Procedural History.

On February 13, 1996, Mr. Meroki filed an application for SSI benefits, alleging disability due to depression, diabetes, and hypertension since January 2, 1996 (R. 57, 60). Mr. Meroki's decision was denied initially and on reconsideration (R. 27-30; 33-35). On October 19, 1998, Mr. Meroki appeared with a non-lawyer representative, Mr. Sam K. Yalda ("Mr. Yalda")(of unknown relationship to Mr. Meroki), and testified before an Administrative Law Judge ("ALJ") (R. 197-210). The record does not indicate that Mr. Meroki received any written notice explaining his right to be represented by counsel. Moreover, the ALJ failed to advise Mr. Meroki of this right on the record prior to the hearing, or to inquire into Mr. Yalda's experience in SSI matters or his ability to render meaningful assistance to Mr. Meroki.

On December 23, 1998, the ALJ issued a decision finding that Mr. Meroki was not disabled because his medically determinable impairments were not severe (R. 17-22), which was amended (but not substantively) on January 6, 1999 (R. 7-14). On March 16, 2000, the Appeals Council denied review of the ALJ's decision (R. 3-4), making this decision the final decision of the Commissioner and subject to judicial review by the district court. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. Mr. Meroki filed his complaint in this Court on May 4, 2000.

## B.    Factual Background.

### 1.    General Information.

Mr. Meroki was born on July 1, 1939 in Iraq (R. 57). He is married (R. 57), but has been separated "for a long time" (R. 113). He has two children, a son and a daughter (R. 57-58, 80, 123, 204). Mr. Meroki entered the United States as a refugee on May 17, 1995 (R. 57, 123). Both Mr.

2

Meroki and his wife currently reside in the United States, but Mr. Meroki is not a United States citizen, nor is he a lawful permanent resident (R. 57). According to Mr. Meroki, the Immigration and Naturalization Service ("INS") is "aware of [his] stay in the United States" and "is allowing [him] to stay indefinitely."[3]

Mr. Meroki's income is limited. The record indicates that he and his wife have received $479 per month from the Illinois Department of Public Aid since February 1, 1996 to the present under the Aid to Families with Dependent Children ("AFDC") program (R. 58). It is not clear, however, how this money has been apportioned between Mr. Meroki and his wife since their separation. According to Mr. Meroki, he lives with his two children in the basement of a townhouse in Niles, Illinois. The record indicates that Mr. Meroki's son was an adult at the time of the administrative hearing (R. 204). His daughter's age is not apparent from the record. Mr. Meroki receives food stamps, but he claims to be ineligible for any other benefits because of the work experience of his spouse or former spouse (even though she is not currently living with him), and claims to have no other income or resources (R. 58). Mr. Meroki has never been employed in the United States, although he worked as a waiter in Iraq from 1968 to 1992 (R. 64, 68a). Mr. Meroki does not speak English, and he cannot remember or write his own name (R. 5, 31, 109). He has been

---

[3]The Court notes that Mr. Meroki does not seek Disability Insurance Benefits ("DIB"), pursuant to Title II, 42 U.S.C. § 423. Thus, although insurability is a prerequisite to receipt of DIB under Title II, 42 U.S.C. § 423(c), it is not an issue in this case because it is not a prerequisite to receipt of SSI benefits under Title XVI. *See* 42 U.S.C. § 1381a-1382. *See also* 20 C.F.R. § 404.101(a)("DIB"); 20 C.F.R. § 416.202 ("SSI"). *See generally Mathews v. Eldridge,* 424 U.S. 319, 324 and n.1 (1976); *Henley v. Commissioner of Soc. Sec.,* 58 F.3d 210 (6th Cir. 1995). After review of the applicable statute and regulations, it appears that Mr. Meroki is entitled to seek SSI benefits, even though he is not a lawful permanent resident or a citizen of the United States "under color of law" as defined by the applicable regulations. *See* 20 C.F.R. §§ 416.202(b)(3); 416.1615. Moreover, because the Commissioner has not raised this issue as a basis for dismissing Mr. Meroki's suit, the Court will accept, for purposes of the present motions, that he is entitled to seek SSI benefits if he meets the other prerequisites of the applicable statute and regulations.

accompanied by his representative, Mr. Yalda, to his medical examinations and to the administrative hearings. Mr. Yalda has also filled out and signed all of Mr. Meroki's administrative forms. The Agency hired an independent Syrian interpreter for Mr. Meroki for the administrative law hearing (R. 199).

2.    Medical Evidence.

(a)    Physical Examinations

In June 1995, Mr. Meroki sought medical treatment after experiencing a "syncopal" (fainting) episode (R. 136, 147, 152-54, 158, 184). The examining doctors found that Mr. Meroki had elevated blood sugar levels, diagnosed him to have diabetes, and prescribed medication (R. 136,143, 152-54, 158). The doctors also diagnosed him with inactive tuberculosis (R. 136, 147-55), for which he was prescribed medication (R. 149-53).[4] The record indicates that by July 1995, Mr. Meroki felt "pretty good" and had not experienced any more dizziness (R. 151), and by August, Mr. Meroki appeared "well" and had "no complaints" (R. 150).

In 1996, Mr. Meroki sought treatment from Dr. Audisho Khoshaba for diabetes and hypertension and was prescribed medication (R. 99-103, 166). Dr. Khoshaba treated Mr. Meroki for several years for these conditions. The record contains various progress notes regarding Mr. Meroki's medical conditions throughout the treating relationship. For example, on his first visit in January 1996, Dr. Khoshaba wrote that Mr. Meroki's diabetes was poorly controlled (R. 100). In July 1996, the progress note indicates that Mr. Meroki has diabetes and hypertension but is "not on

---

[4]Follow-up letters contained in the record indicate the Mr. Meroki's tuberculosis remained inactive through the most recent test done in July 1997 (R. 126, 127, 137-44). Although the ALJ does not discuss the medical evidence related to Mr. Meroki's inactive tuberculosis, Mr. Meroki does not claim a disability or an impairment based on tuberculosis (Pl.'s Mem. at 2).

medication . . ." (R. 165). On August, 3, 1996, the note indicates that Mr. Meroki is "on medication . . . no problems" (R. 103, 166). In December 1996, progress notes indicate that Mr. Meroki was "not taking [his] medication" (R. 166); and on February 26, 1997, notes indicate that Mr. Meroki had "not [been] taking medication, for several day[s]" (R. 166, 168). On July 30, 1997, Dr. Khoshaba wrote both a progress note and a letter. The progress note says that Mr. Meroki's diabetes is "not well-controlled, . . . (illegible) insurance and he cannot afford it" (R. 168). In the letter, Dr. Khoshaba wrote:

> To whom it may concern:
>
> Mr. Meroki is my patient, and he has hypertension, diabetes mellitus, not well controlled and currently is on medication for both conditions.

(R. 125). On October 7, 1997, in typewritten progress notes, Dr. Khoshaba wrote, under his subjective evaluation, "patient on medication for hypertension . . dm [diabetes mellitus] none insulin dependent, good control, on medication" (R. 169). On February 2, 1998, Dr. Khoshaba indicated that Mr. Meroki was on and off medication because he cannot buy it "all the time" (R. 169). Dr. Khoshaba diagnosed uncontrolled Diabetes Mellitus Type II, and hypertension and prescribed medication (R. 170).

Mr. Meroki also sought treatment from Dr. Senno in late 1997 and 1998. Dr. Senno reportedly wrote that Mr. Meroki's dizziness improved after he took his medication (R. 182) (dizziness "much better after he takes the pills").

Medical records from consulting physicians present basically the same picture with respect to Mr. Meroki's diabetic and hypertension conditions. In October 1996, Dr. Sanjay Bharti examined Mr. Meroki at the Agency's request (R. 116-19). Dr. Bharti reported that Mr. Meroki's chief

complaint was diabetes and, although Mr. Meroki stated that he was on medications, he did not bring the medicine with him. Mr. Meroki claimed to be on medication for hypertension as well. Mr. Meroki complained of poor eyesight; pain in his shoulder, back, knees and legs; numbing in his body and a resulting inability to walk; and an inability to lift anything weighing more than 6 pounds (R. 116). Mr. Meroki also complained of headaches and dizziness and fainting spells lasting up to 35 minutes, but he denied heart problems (R. 116). Dr. Bharti observed that Mr. Meroki walked with a cane; could not squat or touch his toes; had limited flexibility in his knees; resisted the doctor's movements; could not raise both shoulders above 110 degrees; could not see to read letters, with a visual acuity of less than 20/80 bilaterally; and had decreased pin prick sensation in both feet -- which the doctor indicated could be due to the diabetes. The doctor also noted that Mr. Meroki's hygiene and grooming were adequate; he had no swelling at the joints; he had a good fist grip, and he sat calmly on the examining table. Mr. Meroki's behavior was distant; his ability to relate his history was poor, due to poor language skills; his overall effort and cooperation were marginal; and "it seemed as though there was a certain air of embellishment in his presentation" (R. 118).

Dr. Bharti concluded that, although Mr. Meroki had "marked restriction of movements at different joints" he did not have any "swelling, deformity or atrophy at the joints indicating disuse. X-rays of Mr. Meroki's back demonstrated minimal osteoarthritis and x-rays of his right knee and left shoulder were negative" (R. 122). Dr. Bharti also concluded that the physical findings were not consistent with Mr. Meroki's symptoms (R. 118). With respect to diabetes, Dr. Bharti confirmed that Mr. Meroki had poor visual acuity, and a decreased pin prick sensation in both feet -- both indicating diabetes, but he found that plaintiff's "history is questionable regarding diabetes" and he "did not bring any medications with him" (R. 118).

(b)     Mental Examinations.

In May 1996, Mr. Meroki underwent a psychological consultation with Peter Roccaforte,
Ph.D. and Nariman Solhkhah, Ph.D. (R. 109-11). The doctors reported that Mr. Meroki answered
all questions by stating that he had lost his memory or could not remember, and he projected an
image of being disoriented (R. 109). Mr. Meroki also stated that he heard sounds and voices
(R.110). The doctors reported that Mr. Meroki's overall behavior was not consistent or congruent
with his story, and he acted as if he had been coached to project an image of memory loss (R. 110).
The doctors believed that Mr. Meroki's overall intellectual ability was in the "low borderline normal
range" (R. 110), and also reported that he was functioning in the "low borderline range of general
intellectual functioning" (R. 111). The doctors' report indicated one diagnosis: malingering.[5]

In October 1996, Mr. Meroki underwent a consultative psychological examination with Dr.
Thomas Owley (R. 112-15). Mr. Meroki complained of memory difficulties and depression for one
year (R. 112). At the time of the examination, Dr. Owley noted that Mr. Meroki was reserved and
guarded, had a depressed mood, flat affect, illogical thought processes, and reported auditory and
visual hallucinations (*e.g.,* "scary ugly images of people") (R. 113-14). Dr. Owley also reported that
Mr. Meroki worked in Iraq from 1980-1992 as a waiter (R. 113), but he did not report any work
activities in the United States since his immigration in May 1995 (R. 64, 113). Dr. Owley observed
that Mr. Meroki was unable to answer many of the questions asked, and that his interpreter
(presumably Mr. Yalda) provided many of the answers (R. 114). In conclusion, Dr. Owley found

---

[5]The essential feature of malingering "is the intentional production of false or grossly exaggerated physical or
psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding working, obtaining
financial compensation, evading criminal prosecution, or obtaining drugs." American Psychiatric Ass'n, DIAGNOSTIC
AND STATISTICAL MANUAL OF MENTAL DISORDERS 683 (4th ed. 1994) (DSM-IV).

that Mr. Meroki had a number of symptoms that did not fit into any diagnostic category (R. 115); for example, Mr. Meroki appeared dysphoric and exhibited psychotic symptoms, but a psychotic disorder would be unusual at his age (R. 115). Dr. Owley diagnosed Mr. Meroki as suffering from major depression with psychotic features, severe (R. 115).

In June 1996 and October 1996, state agency psychological consultants reviewed Mr. Meroki's medical records and opined that he did not have a medically determinable mental impairment and was malingering (R. 88).

## B.    Plaintiff's Statements and Testimony.

In statements to the Agency, Mr. Meroki reported that he had memory loss, trouble concentrating and thinking, major depression, and saw images and heard voices. He also stated that he had diabetes, hypertension, dizziness and pain throughout his body (R. 60, 74, 81, 97). Mr. Meroki reported that he did very little, and that he watched television, listened to music, paced, and attended church monthly, but rarely left the house because he would get lost (R. 63, 76, 80-82). Mr. Meroki stated that he worked as a waiter in Iraq from 1968-1992 (R. 64). Later he stated that he had worked at "a place for food" (R. 205).

At the October 1998 hearing, Mr. Yalda (his non-attorney representative) questioned Mr. Meroki in English, and an independent interpreter translated (R. 200-09). Mr. Meroki's testimony consisted of the following information. He has hypertension and diabetes (R. 202-03). When asked if his diabetes causes problems, Mr. Meroki stated that he did not know, but that diabetes was "not good for the body" (R. 208). Mr. Meroki also stated that he had problems with dizziness and sometimes felt as though he were falling down (R. 202). Mr. Meroki was not sure how often he experienced these problems, but he thought it was about every ten days (R. 206). Mr. Meroki also

8

complained that his arm hurt and he could not carry any weight without difficulty -- even a styrofoam cup (R. 203, 207). Mr. Meroki further complained that his leg hurt sometimes and he could hardly walk (R. 207). He could not remember how long he had been walking with a cane, but he thought that a doctor had prescribed it (R. 209). Mr. Meroki also claimed to have problems sleeping (R. 202), due to nightmares (R. 208). He also claimed to have problems with his memory (R. 202), could not remember where he was born, when he came to the United States, or where he lived (R. 203). Mr. Meroki testified that his children cared for his personal needs and he ate once a day (R. 209). Mr. Meroki complained that he spent his time "sitting like a prisoner" or pacing (R. 209).

## II.

The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (1998). The ALJ must consider: (1) whether the claimant is presently unemployed; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520 (1998); *see also Young v. Secretary of Health and Human Services*, 957 F.2d 386, 389 (7th Cir. 1992). A finding of disability requires an affirmative answer at either Step 3 or Step 5. A negative answer at any step (other than Step 3) precludes a finding of disability. *Id.* The claimant bears the burden of proof at Steps 1 through 4, after which the burden of proof shifts to the Commissioner at Step 5. *Id.* The ALJ's analysis at Step 5 typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform a particular category of work (*i.e.*, skilled or unskilled and

sedentary, light, medium, heavy or very heavy work), as well as the availability of such work in the national economy.

In reviewing the Commissioner's (here the ALJ's) decision, this Court may not decide facts anew, reweigh the evidence, or substitute its own judgment for that of the Commissioner. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405 (g) (1988), which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron* 19 F.3d at 333 (*quoting Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner (or ALJ), not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). *See also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which the ALJ finds more credible). The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Erhart v. Secretary of Health and Human Services*, 969 F.2d 534, 538 (7th Cir. 1992).

Of course, this does not mean that the Commissioner (or ALJ) is entitled to unlimited judicial deference. The ALJ "has a basic obligation to develop a full and fair record." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997). The ALJ then must consider all relevant evidence in the record, and may not select and discuss only that evidence that favors his or her ultimate conclusion. *Herron,* 19 F.3d at 333. And, although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ's analysis must be articulated at some minimal level and must state the reasons for accepting or rejecting "entire lines of evidence." *Id. See also Young*, 957 F.2d at 393 (ALJ must

10

articulate reason for rejecting evidence "within reasonable limits" if there is to be meaningful appellate review); *Guercio v. Shalala*, No. 93 C 323, 1994 WL 66102, *9 (N.D. Ill. 1994) (ALJ need not spell out every step in reasoning, provided the ALJ has given sufficient direction that the full course of the decision may be discerned) *(citing Brown v. Bowen*, 847 F.2d 342, 346 (7th Cir. 1988)).

A threshold issue raised by Mr. Meroki is whether the ALJ failed to properly advise him of his right to be represented by an attorney (Pl.'s Mem. at 9-14). "Because a claimant has a statutory right to counsel, waiver of that right must be knowing and intelligently made, for which purpose a claimant must be "adequately informed" either "in prehearing notice or at the hearing." *Oyen v. Shalala,* 865 F. Supp. 497, 507 (N.D. Ill. 1994) (quoting *Thompson v. Sullivan,* 933 F.2d 581, 584 (7th Cir. 1991)). The Court's review of the record confirms that, indeed, Mr. Meroki was not adequately informed of this right by the ALJ or by any prehearing notices.

The Agency gave Mr. Meroki two forms in 1996 when he filed his initial application for SSI: one entitled "Appointment of Representative"and one entitled "Information For Claimants" (attached to the appointment form) (R. 38-39). The Appointment of Representative form has a box entitled "Acceptance of Appointment" which has two places for a check mark: one for an attorney and one for a non-attorney. That form also has boxes for the appointed representative to sign his or her name and to waive the fee the representative is entitled to charge for services. The Information For Claimants form only outlines "what a representative may do"; what a representative may charge; and how much the claimant needs to pay (R. 39). This form does not advise the claimant that the representative may be an attorney; nor does it advise the claimant that a non-attorney representative needs to be "capable of giving valuable help . . . in connection with [the] claim." 20 C.F.R. §§ 404.1705(b)(2) and 416.1505(b)(2). These forms are in English, and there is no indication that Mr.

Meroki was advised, in his own language, about the information contained in these forms. Moreover, at the administrative hearing, when the Syrian interpreter was present, the ALJ did not independently inquire into whether Mr. Meroki wanted an attorney representative rather than a non-attorney representative. Thus, the ALJ could not determine if Mr. Meroki waived his right to counsel and whether this waiver was knowing and voluntary. Moreover, although the Act permits a claimant to choose an attorney or a non-attorney representative, 42 U.S.C. § 406, the non-attorney representative must be "capable of giving valuable help . . . in connection with [the] claim," 20 C.F.R. §§ 404.1705(b)(2) and 416.1505(b)(2), and the ALJ failed to make any inquiry into Mr. Yalda's qualifications to serve Mr. Meroki as his representative.

In *Thompson*, the Seventh Circuit held that the alleged waiver of counsel by the claimant there was invalid where the facts revealed much more of an attempt by the Agency and the ALJ to inform the claimant of his rights than did the Agency and the ALJ in Mr. Meroki's case. In *Thompson*, the claimant (who read, spoke and wrote in English) was informed in a letter that he had the right to be represented by an attorney or other representative of his choice; that the Agency would help him find an attorney; and, if he was unable to pay for the attorney, then the Agency might help him pay for one. The written notice also informed the claimant that there was a cap on attorneys fees limited to twenty-five percent of any award received. *Id.* at 583-84. At the administrative hearing, the ALJ also specifically asked the claimant if he understood his right to counsel, and the Agency's willingness to appoint one. However, when the claimant indicated that he was not able to hire a lawyer because he was not able to pay for one, the ALJ did not make clear what the written notice had vaguely informed the claimant of earlier, namely that the Agency would make a contingency arrangement with a lawyer if the claimant preferred an attorney representative

12

rather than a non-attorney representative but could not afford to pay for one. The ALJ's failure to cover this "important matter[] concerning representation by an attorney" led the *Thompson* court to conclude that the claimant did not knowingly and intelligently waive the right to counsel. 933 F.2d at 581-85.

Here, the written notices that Mr. Meroki received did not inform him of his right to be represented by an attorney rather than a non-attorney representative. They merely informed him of his right to be represented, and somewhat cryptically laid out the choice of attorney or non-attorney in two boxes on the appointment form in a section to be filled out by the appointed representative, rather than the claimant. This very limited information, together with the claimant's inability to read or speak in English, make the ALJ's failure to ensure that Mr. Meroki was advised of the right to an attorney representative insufficient under *Thompson* to establish a valid waiver.

Similarly, in *Oyen,* the district court held that there had not been a valid waiver where the ALJ did not inform the claimant of "*any* terms of [the] right to counsel, and the record does not contain any prehearing written notice that adequately inform[ed] [the claimant] of that right." 865 F. Supp. at 508 (emphasis in original) (citing *Thompson,* 933 F.2d at 584-85). *Oyen* is directly on point here. In that case, the claimant had a non-attorney representative -- a friend -- who was not capable of giving valuable help to her in connection with her claim (*i.e.,* the representative did not know the difference between a representative and a witness). 865 F. Supp. at 507-08. Here, Mr. Yalda appears to be similarly unqualified. Although faithfully present at all the hearings, medical appointments and document signings, the hearing transcripts reveal that the ALJ had to ask Mr. Yalda to produce the relevant medical records (R. 188-89); Mr. Yalda was unaware of his need to specifically articulate the types of medicines Mr. Meroki needed for his various ailments (R. 188);

13

and Mr. Yalda, at one point, actually indicated a preference to waive Mr. Meroki's right to testify (when the interpreter did not show up) and to have the decision made from the paper record itself (R. 193) -- a waiver that the ALJ did not enforce at the next hearing, where the interpreter did appear and testimony was taken on a very basic level. Mr. Yalda's questions of Mr. Meroki at this third hearing further reveal his inability to present and elicit "the best evidence" Mr. Meroki might offer to prove his claim (R. 199-210).

## IV.

The defendant does not attempt to defend the adequacy of the waiver of counsel (Def.'s Mem. at 11 n.4). Rather, the defendant argues that a remand is not warranted because there was no prejudice from the ALJ's failure to obtain a valid waiver (Def.'s Mem. at 11-14). The Commissioner correctly points out that courts have held that a remand is not warranted if the ALJ, although failing to elicit a valid waiver, nonetheless fully and fairly develops the record in a way that permits the claimant to present his or her best evidence in support of the claim. *Thompson,* 933 F.2d at 585-86; *see also Binion v. Shalela,* 13 F.3d 243, 245-46 (7th Cir. 1994); *Oyen,* 865 F. Supp. at 508. However, where the ALJ does not obtain a valid waiver, the burden is on the Commissioner to show that the ALJ fully and fairly developed the record. *Nelson,* 131 F.3d at 1235 n.3; *Binion,* 13 F.3d at 245. This flows from the proposition that while it always "is a basic obligation of the ALJ to develop a full and fair record," *Smith v. Secretary of Health, Education and Welfare,* 587 F.2d 857, 860 (7th Cir. 1978), where the claimant proceeds pro se or has not validly waived the right to counsel, the ALJ has a "special duty" to ensure that all the relevant facts come to light. *Thompson,* 933 F.2d at 585-86 (citing cases). "The ALJ does not act as counsel for [the] claimant, but as an examiner who thoroughly develops the facts." *Id.* (citing *Smith v. Schweiker* 677 F.2d 826, 829 (11th Cir. 1982).

This duty requires the ALJ to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Id.* at 585. "Once the [Commissioner] establishes that the record was developed fully and fairly, the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap. Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant." *Binion*, 13 F.3d at 245.

## V.

As the ALJ correctly pointed out in her decision, to have a "severe" impairment at Step 2, the impairment must be "medically determinable." A medically determinable impairment is one that results from "anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." The impairment "must be established by medical evidence consisting of signs, symptoms and laboratory findings" rather than the claimant's statement of symptoms alone. *See* 42 U.S.C. § 1382(c)(3)(A); 20 C.F.R. § 416.908 and § 416.929(b). *See also* Social Security Ruling 96-4, 61 Fed.Reg. 34488 (1996) ("in the absence of a showing that there is a medically determinable physical or mental impairment, an individual must be found not disabled at Step 2 of the sequential evaluation process"). The "severity" requirement is met only if an individual's impairment or combination of impairments "significantly limit" his "physical or mental ability to do basic work activities."[6] 20 C.F.R. § 416.920 (c).

In reaching her decision that Mr. Meroki was "not disabled" at Step 2, the ALJ considered the impairments alleged as disabilities in Mr. Meroki's SSI application, namely, depression,

---

[6]"Basic work activities" are the abilities necessary to perform most jobs, such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 416.921(b). Such activities also include the ability to see, hear, and speak; deal with simple instructions; exercise judgment; respond appropriately to supervision, coworkers, and usual situations; and deal with changes in a routine work setting. *Id.*

diabetes, hypertension, numbness in both shoulders, dizziness, headaches and bad eyesight (R.10). The ALJ determined that Mr. Meroki was not disabled based on a finding that he did not have a "severe" impairment that was "medically determinable" at Step 2 of the sequential evaluation. The ALJ specifically found that some of Mr. Meroki's alleged impairments "cannot be established by objective clinical and laboratory findings" (R.18), and those impairments established by the medical evidence "are readily controlled with medication and [do] not affect the claimant's ability to perform work related functions" (R.18). The impairments that the ALJ found were medically established were: arthritis, diabetes, and hypertension (R.19); the impairments that were not medically established included: mental problems; pain, problems with his right arm, shoulder, left knee and legs; and complaints of dizziness and forgetfulness (R.18-19).

Given the lack of a valid waiver of counsel by Mr. Meroki, we consider the sufficiency of the factual record developed by the ALJ concerning Mr. Meroki's non-medically determinable impairments, and then his medically determinable impairments.

## A.    Non-Medically Determinable Impairments.

The ALJ concluded that Mr. Meroki's alleged mental problem, pain, problems with his right arm, shoulder, left knee and legs, and complaints of dizziness and forgetfulness are not medically determinable or severe. To be severe, those impairments would have to affect Mr. Meroki's ability to perform basic work activities. The ALJ concluded that the medical evidence as a whole did not support such a finding. The Court concludes that the ALJ fully and fairly developed the record on this point, and that her findings in this regard were supported by substantial evidence.

With respect to pain in his joints, arm, shoulder, knee and legs, the ALJ recognized that Mr. Meroki's x-rays showed minimal arthritis in his back, but these x-rays were negative elsewhere (R.

16

9, 11, 122). The ALJ also noted that Mr. Meroki had not sought treatment for such impairments and that the consultative examiner, Dr. Bharti, noted that the physical findings were not consistent with Mr. Meroki's alleged symptoms (pain), since he had no swelling or deformity of his joints, or atrophy which would indicate a lack of use (R. 118). *See* 20 C.F.R. § 416.929(c) (treatment and objective medical evidence considered in evaluating claimant's symptoms). With respect to dizziness and fainting, there is some medical evidence to support the existence of such an impairment. However, the ALJ found that the reported syncopal episode resolved "spontaneously," and Dr. Senno, who noted Mr. Meroki's complaints, "did not deem the complaints of sufficient significance to order any diagnostic testing" (R. 11). Based on the regulations' definition of "medically determinable" and "severe," the ALJ concluded that Mr. Meroki's complaints of dizziness were just that: complaints with only one reported episode of syncope. Without objective medical evidence to support Mr. Meroki's complaints, the ALJ found that this alleged condition did not "rise to the level of a medically determinable, severe impairment" (R. 11). These findings by the ALJ are supported by substantial evidence, and there is no basis to disturb them.

With respect to Mr. Meroki's forgetfulness and alleged depression (including nightmares), the ALJ found that the two consultative examinations Mr. Meroki underwent for the purpose of determining the existence or non-existence of a mental impairment resulted in conflicting opinions. The ALJ is entitled to choose between conflicting medical evidence and give greater weight to that which she finds more credible so long as a "reasonable mind" would make a similar choice based on analysis of the same evidence. *See Herr,* 912 F.2d at 181 (7th Cir. 1990); *Stuckey,* 881 F.2d at 509. In this case, neither of the doctors expressing views concerning Mr. Meroki's alleged depression is a treating physician; rather, both are consultants hired for the specific purpose of

17

evaluating the existence of Mr. Meroki's alleged impairments. Thus, one opinion is not presumptively entitled to greater weight than the other. *See Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1995) (opinions of treating physicians entitled to special weight even though not automatically controlling). In such cases, it is the ALJ's function to resolve conflicts among the consultants, where the medical evidence is equally balanced, and to provide an explanation for this choice that a reasonable mind would accept. *Id. See also Stuckey,* 881 F.2d at 509.

The Court's review indicates that the ALJ performed that function based on the proper legal criteria. The first consultative report, submitted by Drs. Roccaforte and Solhkhah, concluded that Mr. Meroki was malingering (R. 110). The second consultative report, submitted by Dr. Owley, diagnosed Mr. Meroki with "major depression with psychotic features, severe" (R. 115). The ALJ chose to rely on the diagnosis of malingering to support her finding that Mr. Meroki did not have a medically determinable mental impairment of any severity. As support for this choice, the ALJ relied on the "evidence as a whole" (R. 10). For example, the Roccaforte/Solhkhah opinion found support in Dr. Bharti's observation that Mr. Meroki had an "air of embellishment" in his presentation (R. 118), and that Mr. Meroki's effort and cooperation during the examination were "marginal" (R. 118). Dr. Bharti, like Dr. Roccaforte, also noted that Mr. Meroki's behavior was not congruent with his verbal responses (R. 110), and a discrepancy existed between the objective medical data and physical findings with Mr. Meroki's alleged symptoms (R. 118). In addition, the state agency psychological consultants who reviewed the medical evidence accepted the diagnosis of malingering, and opined that Mr. Meroki had no medically determinable impairment (R. 88). The Court finds that all of this constitutes substantial evidence for the ALJ's decision to choose malingering rather than major depression as the more accurate diagnosis for Mr. Meroki's alleged impairments.

Finally, the Court rejects the argument that the ALJ should have found that Mr. Meroki's low intelligence would have more than a minimal effect on his ability to work (Pl.'s Mem. at 8). As the defendant correctly points out, "below average intellectual functioning does not automatically . . . affect one's ability to perform basic work activities" at a minimum level (Def.'s Mem. at 10) (citing *Strunk v. Heckler*, 732 F.2d 1357, 1361 (7th Cir. 1984) (plaintiff "not mentally retarded to a degree sufficient to constitute a severe impairment within the meaning of the Social Security Act")). Dr. Roccaforte's report indicated that Mr. Meroki's intellectual ability was "in the low borderline *normal* range" and in the "low borderline range" (R. 110-11) (emphasis added). The Court agrees that Dr. Roccaforte's report "does not indicate" that Mr. Meroki's "functioning is much below normal or would preclude him from performing simple work" (Def.'s Mem. at 10). Moreover, as the defendant correctly points out, "the doctor did not actually diagnose any cognitive impairment, and his diagnosis of malingering casts doubt on the reliability of [Mr. Meroki claims]" (Def.'s Mem. at 10) (R. 110). The record does demonstrate that in the past Mr. Meroki was able to work as a waiter for many years (R. 64), and there is no medical evidence to suggest that he lacks the mental ability to do so now. Accordingly, the Court agrees with the ALJ's conclusion that Mr. Meroki's alleged mental impairments are not medically determinable.

## B. Medically Determinable Impairments.

With respect to Mr. Meroki's medically determinable impairments -- diabetes and hypertension -- the record is fully and fairly developed and the evidence substantially supports the ALJ's conclusion that Mr. Meroki has these conditions and that they can be controlled with medication. But, without these medications, Dr. Khoshaba indicated that Mr. Meroki's diabetes mellitus (Type II) is "uncontrolled" and could cause some of the symptoms of which Mr. Meroki

19

complains (dizziness, pain, vision problems, problems carrying things, and numbness in his lower extremities) (R. 101-03, 162-70). The issue, therefore, is not whether they are controllable or uncontrollable; the issue is whether Mr. Meroki, who claims limited resources, can afford the medications he needs to control his medically determinable impairments.

The Commissioner may not deny benefits to a claimant if a condition that would be a severe impairment is remediable, but the claimant cannot afford the necessary medical treatment. *See Gamble v. Chater,* 68 F.3d 319, 320-21 (9th Cir. 1995) (collecting circuit decisions from the 4th, 5th, 8th, 10th and 11th circuits holding the same). In other words, a person who otherwise meets the disability criteria cannot be denied benefits for failing to obtain treatment that he or she cannot afford. *See* Social Security Ruling 82-59.[7]

However, the evidence concerning Mr. Meroki's financial ability to obtain the medication necessary to treat diabetes is sparse. The record contains evidence that Mr. Meroki does not work; receives only food stamps and AFDC payments (R. 58); Mr. Meroki's statements in his SSI application (R. 57-59); and a note from Dr. Khoshaba indicating that Mr. Meroki could not afford the necessary medicines (R. 168). The problem the Court faces is that there are material gaps in this evidence related to Mr. Meroki's base of financial resources; his continued entitlement (if any) to AFDC given that his son and possibly his daughter are adults; the income or financial support (if

---

[7]Social Security Rulings are final opinions and statements of policy by the Commissioner, binding on the ALJ. 20 C.F.R. §422.406(b)(1). They are "to be relied upon as precedent in determining cases . . . ." *Paulson v. Bowen,* 836 F.2d 1249, 1252 n.2 (9th Cir. 1988). While the Seventh Circuit has not directly addressed this question, we have no reason to believe that it would decline to follow the Social Security ruling and the six other circuits that have done so. *See, e.g., DeFrancesco v. Bowen,* 867 F.2d 1040, 1043 (7th Cir. 1989) (citing with approval 4th and 8th Circuit decisions holding that inability to pay for medicine as well as lack of mental acumen or linguistic problems is "good reason" for failing to comply with medical treatment plan and does not constitute non-compliance under 20 C.F.R. § 404.1530(b) and 20 C.F.R. § 416.930(b)).

any) that Mr. Meroki pays to or receives from his wife, from whom he is allegedly separated; what use (if any) Mr. Meroki makes of the income he does receive from the State of Illinois and/or from his wife and children; and what other forms of public assistance (if any) Mr. Meroki might be able to obtain if he sought them. Mr. Meroki's representative did not develop the record by inquiring into these areas; nor did the ALJ. Without the answers to these questions, it is not possible to fairly determine whether Mr. Meroki's diabetes is sometimes "uncontrolled" because he cannot afford medicine, or because for reasons best known to Mr. Meroki he simply does not take medications he can afford.

It normally would be Mr. Meroki's burden of proof at Step 2 to establish that he has a legal disability; and part of that burden here would be the submission of evidence sufficient for the Court to determine his financial ability to pay for medications his doctor says are necessary to control his diabetic condition. But, because Mr. Meroki did not validly waive his right to counsel, the Commissioner has the burden here of showing that the ALJ discharged her "special duty" to ensure a fully and fairly developed record. *Nelson*, 131 F.3d at 1235 n.3.

The defendant claims that the ALJ did so, because she "probed into Plaintiff's problems by directly questioning Plaintiff" (Def.'s Mem. at 12, citing R. 203-10). In particular, the defendant argues that the ALJ specifically inquired into each of Mr. Meroki's alleged impairments at the hearing, and thus the record is fully developed (Defs.'s Mem. at 12). However, this argument misses the mark. The fact that the ALJ fully and fairly developed the record in *some* areas does not establish that the ALJ did so in *all* critical areas. In view of the report of Dr. Khoshaba that Mr. Meroki needed medication to control his diabetes but took medication irregularly, and the evidence of Mr. Meroki's limited resources, the ALJ's special duty required that she develop the record

regarding the reasons why Mr. Meroki was not taking medication regularly. The ALJ did not probe into how often Mr. Meroki takes and needs to take these medications for his diabetes; how much these medications cost; and Mr. Meroki's ability to obtain them on a consistent and regular basis. Answers to these questions were necessary to develop a full and fair record, and to provide an adequate basis to decide if Mr. Meroki has a severe impairment at Step 2.

We believe that an attorney might have inquired into those matters at the hearing. By failing to adequately inform Mr. Meroki of his right to choose an attorney representative, the ALJ denied Mr. Meroki a chance to present the best evidence in support of his claim. *See Thompson,* 933 F.2d at 588. The Court therefore finds that Mr. Meroki has satisfied his burden of showing prejudice from the ALJ's failure to fully develop the affordability issue, and the Court therefore reverses the Commissioner's decision and remands the case.[8]

## CONCLUSION

By remanding the case, the Court expresses no view as to what the result will be after further proceedings. Because our review is limited, the Court cannot determine, in the first instance, whether Mr. Meroki has the ability to control his diabetes; whether, if not, that constitutes a "severe impairment;" and, if so, whether that would preclude basic work activities.[9] *See Oyen,* 865 F. Supp.

---

[8]While Mr. Meroki's counsel did not specifically raise Mr. Meroki's ability to obtain medication as an "evidentiary gap" in the record, Mr. Meroki's counsel argues that his diabetes is uncontrolled, and that the ALJ did not fully and fairly develop the record as to that point (*see* Pl.'s Mem. 7-8, 14; Pl.'s Reply Mem.3). If Mr. Meroki cannot afford the medications necessary to control his diabetes, an impairment the ALJ found medically determinable from the record, then the ALJ cannot -- as she did -- deny Mr. Meroki benefits based on the fact that this impairment is controlled with medication. *See, e.g., Gamble,* 68 F.3d at 320-21. Thus, the affordability issue is a logical incident of the issue regarding whether Mr. Meroki's diabetes is uncontrolled.

[9]Mr. Meroki argues that "[u]ncontrolled diabetes is a severe impairment within the intendment of Social Security Ruling 96-3p" (Pl.'s Reply at 2). "Diabetes Mellitus is a disorder in which blood levels of glucose . . . are abnormally high because the body does not release or use insulin adequately. Over time elevated blood sugar can result in poor circulation harming the heart, brain, legs, eyes, kidneys, nerves and skin. Nerves can be damaged resulting in

at 511 ("[i]t is impermissible to speculate on what the outcome would have been if Oyen had been accorded her . . . statutory rights" and the court "cannot properly indulge" in a "'What if?' exercise, for a reviewing court 'cannot rectify [an ALJ's] error by playing administrative law judge' itself"). We leave that decision to the Commissioner, in the first instance, and we remand this case, pursuant to Sentence 4, 42 U.S.C. § 405(g), to take new evidence and make findings consistent with this opinion. Accordingly, the Court reverses and remands the ALJ's decision of "not disabled" at Step 2 of the sequential analysis, and denies defendant's motion for summary judgment (doc. # 20-1). Plaintiff's motion for summary judgment (doc. # 18-1) is granted.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: June 13, 2001**

---

sudden arm or leg weakness, abnormal sensations, burning pain, and tingling. Heart attacks and strokes are more common." (Id.) (citing THE MERCK MANUAL OF MEDICAL INFORMATION (1997)).